Commonwealth, Appellant, *v.* Pittman.

2

WATKINS, J., filed a dissenting opinion, in which MONTGOMERY, J., joined.

Argued September 11, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Arlen Specter,* Assistant District Attorney, with him *Louis F. McCabe,* Assistant District Attorney,

*Paul M. Chalfin,* First Assistant District Attorney, and *James C. Crumlish, Jr.,* District Attorney, for Commonwealth, appellant.

*Robert N. C. Nix, Jr.,* for appellee.

OPINION BY ERVIN, J., December 12, 1962:

On January 30, 1961 Officer Francis Stewart, with two fellow officers, was in a motor car on South Street in the 1500 block. Perceiving a man on the street who had on 10 or 15 occasions given Stewart accurate information concerning possessors of narcotics, Stewart alighted from the car and approached the man. The informant told him that appellee, Irvin Pittman, had narcotics on the premises at 1536 South Street, which was half a block from them as they talked. Officer Stewart, with another officer, walked to the barber shop, which was open for business, and entered it. They did not see appellee in the shop but heard persons talking in the basement. They descended to the basement and observed appellee and another man, Pope, a known addict, sitting in front of a trash basket. The men offered no comment but rose and Officer Stewart removed the trash basket, revealing a brown paper bag, the contents of which proved to be heroin. Other packets likewise containing heroin were found in the rafters of the cellar. The officers took the narcotics, with the appellee, Pope, and one of the barbers, Wilson, to the office of the Narcotics Squad. At the office appellee made a statement in writing admitting that he owned the heroin, having purchased it in New York. He exonerated Pope and Wilson from any knowledge or connection with the narcotics. A petition and motion to suppress the evidence was filed by appellee and, after hearings, the court below granted the petition to suppress the evidence. The Commonwealth appealed.

Where the order suppressing evidence as having been obtained by illegal search and seizure in effect

terminates the prosecution, it is definitive and appealable by the Commonwealth: *Com. v. Richards,* 198 Pa. Superior Ct. 39, 42, 182 A. 2d 291.

In the *Richards* case we reversed the court below, which had granted defendant's motion in arrest of judgment on the ground that the narcotics were illegally seized without a search warrant. In that case we held that the search and seizure were not unreasonable under all the facts present in that case. The facts of that case are very similar to the facts in this case, with the exception that in the *Richards* case the informer told the police that the defendant was planning to leave his apartment. In the present case Officer Stewart testified that he didn't get a warrant because "I thought we didn't have time. There was no way of keeping the place under surveillance. We didn't know if we were seen in the neighborhood, and by us leaving someone in surveillance, we would have been seen." He also testified: "I'm afraid we wouldn't have gotten any evidence. My belief was that persons had seen us on South Street, and, if we had left, information would have gotten back to the barber shop and we wouldn't have gotten the evidence."

The Commonwealth argues that it was unreasonable to require a search warrant because of the probability that the police had been "spotted" and immediate action was necessary to forestall removal of the contraband before a warning could be given to the appellee. The Commonwealth asks the court to take into consideration the general nature of the locale. It states that 15th and South Streets has been the scene of mob attacks on officers attempting to make an arrest. It is a busy street and the good citizens on the street are not friendly to police officers. It argues that the fear of the officer that the contraband might be removed should time be taken to get a search warrant was fully justified in this case. If there was probable cause for

the officer's fear, we do not believe that the search was unreasonable.

As in the *Richards* case, the information given to the officer in the present case was from a reliable source. The officer testified that he had obtained reliable information from this same informant between 10 and 15 times theretofore. From this information it was apparent to the officer that a felony was then and there being committed a half block away. Under the Act of July 11, 1917, P. L. 758, §4, 35 PS §854, and §12 of the same act, 35 PS §865, it is a felony to possess such drugs. An arrest without a warrant was therefore justified: *Com. v. Richards,* supra, at p. 45, and the cases therein cited.

Probable cause exists where "the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed: *Carroll v. United States,* 267 U. S. 132, 162, 69 L. ed. 543, 555, 45 S. Ct. 280, 39 A.L.R. 790.

It is argued by appellee that the arrest in this case was not made until after the search had revealed the possession of the illegal drug. We think that it could be well argued that the arrest was made as soon as the officers came into the presence of the appellee. Certainly, if the appellee had attempted to escape at that time the officers would have restrained him. We are certain, however, of the fact that the officers would have been justified in making an immediate arrest because they were in possession of information from a reliable source that a felony was being committed in their presence. We think, therefore, that it makes little difference whether the formal arrest was made immediately after the officers entered the cellar or after they discovered the illegal drug. Both acts were to all

intents and purposes simultaneous. It has long been the settled law of this State that a police officer, or even a private citizen, may arrest for a felony without a warrant: *Com. ex rel. Spencer v. Ashe,* 364 Pa. 442, 445, 71 A. 2d 799.

The right to search the person incident to arrest always has been recognized in this country and in England and where one has been placed in the custody of the law by valid action of officers, it is not unreasonable to search him nor is it unreasonable to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed. "It became accepted that the premises where the arrest was made, which premises were under the control of the person arrested and where the crime was being committed, were subject to search without a search warrant. Such a search was not 'unreasonable.'" *United States v. Rabinowitz,* 70 S. Ct. 430, 339 U. S. 56.

We think also that the officers could reasonably take into consideration the fact that the appellee was an old offender. Officer Stewart testified that he had previously made several arrests in this barber shop. This phase of the matter was not pursued because the attorney for appellee said: "Well, now, let's get to the issue of the case." We may therefore assume that the officers had knowledge that the appellee was an old offender and they had reliable information that he was again committing a similar offense. This was not a mere exploratory excursion but was a search for specific drugs which the officers had good reason to believe were in appellee's possession.

"The judgment of the officers as to when to close the trap on a criminal committing a crime in their presence or who they have reasonable cause to believe is committing a felony is not determined solely upon whether there was time to procure a search warrant.

Some flexibility will be accorded law officers engaged in daily battle with criminals for whose restraint criminal laws are essential." *United States v. Rabinowitz,* supra, at p. 435.

Under all of the facts present it is clear that the search and seizure by the Narcotics Squad officers were not unreasonable.

The order is reversed and the record is remitted to the court below for further proceedings not inconsistent with this opinion.

***

DISSENTING OPINION BY WATKINS, J.:

I respectfully dissent. This case goes beyond *Com. v. Richards,* 198 Pa. Superior Ct. 39, 182 A. 2d 291 (1962). In that case the officers were lawfully on the premises and allegedly made their search after arresting the defendant for assault and battery. Here, no warrant was obtained and the search was not incidental to an arrest, nor were the officers legally on the private property of the defendant.

The contention of the appellant (1) that the general nature of the locale created the risk of mob violence on the police officers and (2) that the entrance of the police was orderly and peaceful, as circumstances reasonably justifying the search, have a hollow ring. As the defendant contends the absence or presence of a warrant would not deter a mob attack, if such was contemplated, and the question is not whether their entry was orderly and peaceable but whether it was lawful.

In the *Richards* case, unlike the instant one, the officers had received specific information that the contraband was in transit and it may be argued that the probability of immediate movement and the escape of the contraband may make the search without a war-

8

rant reasonable. This is so held in the many state and federal automobile, truck and ship cases. But here, there was no such urgency present as there was no evidence to suggest that the contraband was in transit so as to permit the officers' invasion of the private quarters of the defendant without a warrant. If the determination of *Mapp v. Ohio,* 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081, as interpreted by this Court, has any meaning left, the opinion of Judge GLEASON of the court below reading as follows, "I reluctantly must come to the conclusion that the officers could have gotten a search and seizure warrant and that the search, under all of the conditions without a warrant, was unreasonable, . . .", should be affirmed.

MONTGOMERY, J., joins in this dissent.